NOT FOR PUBLICATION

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

SERGIO OROZCO-BARAJAS,      :
                          :   Civil Action No. 11-3628 (NLH)
           Plaintiff,  :
                          :
           v.            :   **OPINION**
                          :
DONNA ZICKEFOOSE, Warden,  :
et al.,                 :
                          :
           Defendants.  :

**APPEARANCES:**

Plaintiff <u>pro se</u>
Sergio Orozco-Barajas
Federal Correctional Center - Fort Dix
Fort Dix, New Jersey 08640

**HILLMAN**, District Judge

    Plaintiff Sergio Orozco-Barajas, a prisoner confined at the Federal Correctional Institution at Fort Dix, New Jersey, seeks to bring this action pursuant to <u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971), alleging violations of his constitutional rights.  Plaintiff paid the filing fee.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review. Plaintiff alleges that in 2009, while he was a pre-trial detainee in the custody of the U.S. Marshal in Kingsville, Texas, he was taken to Defendant Christus Spohn Hospital Kleberg in Kingsville. He alleges that Defendant Dr. Flores[1] performed surgery to his leg which was supposed to replace some metallic hardware installed in his femur in 1999.  Plaintiff alleges that Dr. Flores did not replace the metallic hardware, but just removed one or more screws from the metallic hardware.  Plaintiff alleges that he then developed abscesses and bone infections.  Plaintiff alleges that Dr. Flores then performed additional surgeries to drain the abscesses and clean the bone infections.  Defendant Christus Spohn Hospital Kleberg and Dr. Flores are collectively referred to hereinafter as the "Texas Defendants."

Plaintiff alleges that sometime thereafter he was sentenced and transferred to the Federal Correctional Institution at Ashland, Kentucky.  He alleges that, while there, he developed an abscess in the area of the incision on his leg.  He alleges that on June 1, 2010, an X-ray revealed a fracture still present in his thigh and problems with his metallic hardware resulting from

_____

[1] Dr. Flores appears to be a physician in the private practice of medicine in Kingsville, Texas.

2

the alleged failure of Dr. Flores to replace the metallic hardware in his leg.  Plaintiff alleges that, instead of taking him to an outside specialist surgeon, Defendants Dr. Ralph I. Touma, Dr. Kenneth J. Gomez, and physician's assistant Laura Bradley, all in the Health Services department at F.C.I. Ashland, performed three surgeries to drain the abscesses, which remained open and draining.  Plaintiff alleges that he requested a referral to a specialist surgeon to remove the metallic hardware, but that Dr. Gomez told him that he would die with this infection.  Plaintiff alleges that he began the administrative remedy process, but was transferred to the Federal Correctional Institution at Fort Dix in November, 2010.  Hereinafter, this Court will refer to Defendants Touma, Gomez, and Bradley, collectively, as the "Kentucky Defendants."

Finally, Plaintiff alleges that while at F.C.I. Fort Dix, he has developed three additional abscesses.  He alleges that the abscesses were observed by the following defendants: 1) Defendant Dr. Abigail Lopez de Lasalle, a clinical director at the Health Services department at F.C.I. Fort Dix, (2) Defendant nurse Ed Eichel, employed as a nurse at F.C.I. Fort Dix, and allegedly responsible for referrals to specialty consultants as Co-Chairperson of the Utilization Review Committee, (3) Defendant Jose Ravago, an MLP at the Health Services department of F.C.I. Fort Dix, who has allegedly been treating Plaintiff, 4) Defendant

Dr. Williams, described as an orthopedic surgeon consulting with the Health Services department at F.C.I. Fort Dix, and (5) Defendant Dr. Sulayman, a physician at the Health Services department at F.C.I. Fort Dix, all of whom will be collectively referred to hereinafter as the "New Jersey Medical Defendants." Plaintiff alleges that the New Jersey Medical Defendants have refused to open and drain these abscesses and have disregarded radiology reports about his fracture and problems with his metallic hardware.  Plaintiff alleges that the New Jersey Medical Defendants have persisted in an easy but ineffective course of treatment with antibiotic medications.  Plaintiff also names Warden Donna Zickefoose as a Defendant.

Plaintiff alleges that all of the named Defendants have been deliberately indifferent to his serious medical needs.  He seeks compensatory damages from all and injunctive relief, in the form of an order directing Defendant Warden Zickefoose to evaluate and treat his serious medical needs.[2]

---

[2] During the pendency of this action, Plaintiff has advised the Court that he was transferred to the Federal Medical Center - Devens, at Ayer, Massachusetts, for a short time, and that he was then transferred back to F.C.I. Fort Dix.  To the extent the transfer was for treatment of the medical condition at the heart of this Complaint, the claim for injunctive relief against Warden Zickefoose may have become moot.  Nevertheless, based upon the allegations of the Complaint, the claim for injunctive relief will be permitted to proceed at this time.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint must plead facts sufficient at least to "suggest" a basis for liability.  <u>Spruill v. Gillis</u>, 372 F.3d 218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;

5

the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, <u>see</u> <u>Papasan v. Allain</u>, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (citations omitted).

The Court of Appeals for the Third Circuit has that the <u>Twombly</u> pleading standard applies in the context of a civil rights action.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 234 (3d Cir. 2008).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal

conclusion couched as a factual allegation." Id. at 1950.  Thus,

"a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

Where a complaint can be remedied by an amendment, a

district court may not dismiss the complaint with prejudice, but

must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34

(1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane

v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal

pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   Bivens v. Six Unknown Agents

In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389 (1971), the Supreme Court held that a violation of the Fourth Amendment by a federal agent acting under color of his authority gives rise to a cause of action against that agent, individually, for damages.  The Supreme Court has also implied damages remedies directly under the Eighth Amendment, see Carlson v. Green, 446 U.S. 14 (1980), and under the equal protection component of the Fifth Amendment's Due Process Clause, see Davis v. Passman, 442 U.S. 228 (1979). Relying upon Bivens, several lower federal courts have implied a damages cause of action against federal officers, under the Due Process Clause of the Fifth Amendment, for claims by federal pre-trial detainees alleging inadequate medical care or unconstitutional conditions of confinement.  See, e.g., Lyons v. U.S. Marshals, 840 F.2d 202 (3d Cir. 1988); Magluta v. Samples, 375 F.3d 1269 (11th Cir. 2004); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978), cert. denied, 446 U.S. 928 (1980).

The Supreme Court has not addressed whether supervisors in Bivens actions may be held liable on a theory of respondeat superior.  Most courts to address the issue, however, have held that liability may not be based on respondeat superior.  See,

8

e.g., Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)(collecting cases); Laswell v. Brown, 683 F.2d 261, 268 & n.11 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983) (basing its conclusion on the fact that the Supreme Court has looked to 42 U.S.C. § 1983 cases in evaluating the nature of defendant officials' qualified immunity); Kite v. Kelly, 546 F.2d 334, 337-38 (10th Cir. 1976). See also Parker v. U.S., 197 Fed.Appx. 171, 173 n.1 (3d Cir. 2006) (not precedential); Balter v. U.S., 172 Fed.Appx. 401, 403 (3d Cir. 2006) (not precedential).  This Court finds persuasive the reasoning of those courts that have declined to impose respondeat superior liability in Bivens actions.  Accordingly, as any damages claims against Warden Donna Zickefoose appear to be based solely upon an untenable theory of vicarious liability, such claims will be dismissed.[3]

---

[3] In addition, any damages claims against the Warden would be meritless, as Plaintiff alleges only that she "disregarded Plaintiff's verbally and written requests for his serious medical needs in the case below." (Complaint, ¶ 1.)  Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

IV.  <u>ANALYSIS</u>

A.  <u>Diversity Jurisdiction</u>

In addition to asserting federal question jurisdiction under 28 U.S.C. § 1331 for his <u>Bivens</u>-type claims, Plaintiff also asserts that this Court can exercise diversity jurisdiction under 28 U.S.C. § 1332.

Section 1332 provides jurisdiction over state-law civil actions if, in the provision pertinent here, the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between "citizens of different States."  It has long been recognized that, to found jurisdiction upon § 1332, there must be complete diversity among all parties, <u>i.e.,</u> each plaintiff must be a citizen of a different state from each defendant.  <u>Owen Equipment and Erection Co. v. Kroger</u>, 437 U.S. 365 (1978).

A plaintiff, as the party asserting federal jurisdiction, "must specifically allege each party's citizenship, and these allegations must show that the plaintiff and defendant are citizens of different states."  <u>American Motorists Ins. Co. v. American Employers' Ins. Co.</u>, 600 F.2d 15, 16 (5th Cir. 1979); <u>see also</u> <u>Universal Reinsurance Co., Ltd. v. St. Paul Fire & Marine Ins. Co.</u>, 224 F.3d 139, 141 (2d Cir. 2000) ("The failure to allege [the party's] citizenship in a particular state is

fatal to diversity jurisdiction"). Specifically with respect to individuals,

> For purposes of determining diversity, state citizenship is equated with domicile. Domicile, however, is not necessarily synonymous with residence; one can reside in one place and be domiciled in another. Residence and an intent to make the place of residence one's home are required for citizenship and to establish a new domicile. Although the analysis is necessarily case specific, courts have looked to certain factors, including state of employment, voting, taxes, driver's license, bank accounts and assets, and civic and religious associations in determining the citizenship of an individual. ...

McCracken v. Murphy, 328 F.Supp.2d 530, 532 (E.D. Pa. 2004) (citations omitted), aff'd, 129 Fed.Appx. 701 (3d Cir. 2005). "For inmates, citizenship for diversity purposes is the state in which the inmate was domiciled prior to incarceration, unless the inmate plans to live elsewhere when he is released in which event citizenship would be that state." McCracken, 328 F.Supp.2d at 532 (citing Flanagan v. Shively, 783 F.Supp. 922, 935 (E.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992)).

Here, Plaintiff has alleged no facts that would permit this Court to determine his citizenship. Thus, he has failed to allege sufficient facts to permit any state-law claims to proceed based upon diversity jurisdiction. This finding does not affect this Court's ability to exercise pendent jurisdiction over certain state-law claims under 28 U.S.C. § 1367.

11

A.   <u>Claims Against Kentucky and Texas Defendants</u>

Plaintiff seeks to assert here state-law medical malpractice claims against the Texas Defendants, who are not alleged to be employees or officers of the United States, as well as <u>Bivens</u>-type claims for deprivation of his Eighth Amendment right to adequate medical care against the Kentucky Defendants, all of whom are alleged to be employees of the United States.

Under Rule 4(e) of the Federal Rules of Civil Procedure, a federal district court has personal jurisdiction over nonresident defendants "to the extent authorized under the law of the forum state in which the district court sits." <u>Sunbelt Corp. v. Noble, Denton & Assoc., Inc.</u>, 5 F.3d 28, 31 (3d Cir. 1993).  New Jersey's long-arm statute extends personal jurisdiction to the boundaries of the Due Process Clause of the Fourteenth Amendment. <u>See</u> N.J.Ct.R. 4:4-4.

A federal district court may exercise either general or specific jurisdiction over nonresident defendants.  When a court exercises jurisdiction over a defendant in a suit <u>not</u> arising out of or related to the defendant's contacts with the forum, the Court is said to be exercising "general" jurisdiction over the defendant.  In such circumstances, due process is not offended if the defendant has certain minimum contacts with the forum so that traditional notions of fair play are not offended by the exercise of jurisdiction.  <u>See generally</u> <u>Helicopteros Nacionales de</u>

12

Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 (1984) (collecting cases).  Nothing in the Complaint suggests that this Court could exercise general jurisdiction over the nonresident Texas Defendants or Kentucky Defendants.

Under the Due Process Clause, a plaintiff asserting "specific" jurisdiction over a nonresident defendant must establish (1) that the defendant purposefully directed his activities at the forum, (2) that the action arises out of or is related to at least one of those activities, and (3) if the first two requirements are met, that the court's exercise of jurisdiction otherwise comports with notions of fair play and substantial justice.  See generally D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 102-03 (3d Cir. 2009) (collecting cases).

Again, based upon the allegations of the Complaint, the claims asserted here do not arise out of any activities in or directed at this forum by the Texas Defendants or the Kentucky Defendants.  Accordingly, this Court may not exercise specific personal jurisdiction over the Texas Defendants or the Kentucky Defendants.

Pursuant to 28 U.S.C. § 1631, when a District Court finds that it is lacking jurisdiction,

> the court shall, if it is in the interest of justice,
> transfer such action or appeal to any other such court
> in which the action or appeal could have been brought
> at the time it was filed or noticed, and the action or
> appeal shall proceed as if it had been filed in or
> noticed for the court to which it is transferred on the

> date upon which it was actually filed in or noticed for
> the court from which it is transferred.

Under this provision, a District Court may sever individual claims and transfer them.  See D'Jamoos v. Pilatus Aircraft Ltd., 566 F.3d 94, 106-07, 109-111 (3d Cir. 2009).  Factors warranting transfer rather than dismissal include finding that a new action would be time barred, that the claims are likely to have merit, and that the original action was filed in good faith rather than filed after the plaintiff either realized or should have realized that the forum in which he or she filed was improper.

Here, it may be that the statute of limitations has run on Plaintiff's claims against the Texas and Kentucky Defendants. See, e.g., McSurely v. Hutchison, 823 F.2ed 1002 (6th Cir. 1987), cert. denied, 485 U.S. 934 (1988) (Kentucky's one-year "personal injury" limitations period applies to Bivens claims); Compton v. Follender, 61 Fed.Appx. 120 (5th Cir. 2003) (Texas limitations period for medical malpractice claims is two years); V.T.C.A., Civil Practice & Liability Code § 74.251 (two year limitations period for medical malpractice claims in Texas).[4]

In addition, this Court must consider whether the claims would likely be meritorious.  In the same vein, as Plaintiff is a prisoner, the claims would be subject to screening, under 28

---

[4] The cover letter to this Complaint was dated June 24, 2011.  Thus, it is not clear whether some or all of the claims against the Texas and Kentucky Defendants would have been barred at the time the Complaint was filed here.

14

U.S.C. §§ 1915 or 1915A or 42 U.S.C. § 1997e.  Here, Plaintiff does not allege that he has complied with the procedural prerequisites for bringing a medical malpractice claim against a Texas health-care provider.  More specifically, Texas law requires written notice of a medical malpractice claim by certified mail, return receipt requested, at least 60 days before the filing of suit and requires, in subsequent filed pleadings, that the plaintiff shall state that he has fully complied with the pre-filing notice provision.  V.T.C.A., Civil Practice & Remedies Code § 74.051.  Plaintiff does not plead that he has complied with this provision.  Section 74.351 of the Texas Civil Practice & Remedies Code requires a plaintiff asserting a medical malpractice claim to serve an expert report within 120 days of filing suit.  Nothing presently before this Court suggests that Plaintiff has complied with the expert report provision, either.  Failure to timely provide the expert report is grounds for dismissal.  See Otero v. Alonzo, 2011 WL 765673 (Tex. App.  March 3, 2011).

Also, as Plaintiff has failed to allege facts regarding his citizenship, it is not clear whether he would be able to proceed in a federal district court sitting in Texas, under diversity jurisdiction, in state-law medical malpractice claims against Texas defendants.

Moreover, with respect to the Kentucky Defendants, Plaintiff has failed to allege facts demonstrating an Eighth Amendment violation.  As discussed more fully below, with respect to the New Jersey Medical Defendants, mere disagreement over the course of care is not sufficient to state a claim under the Eighth Amendment.  Here, Plaintiff alleges that the Kentucky Defendants performed three operations to treat his continuing infections.  Thus, it is clear from Plaintiff's allegations that he was receiving care for his medical problems.  The fact that he desired <u>different</u> care is not sufficient to state a claim for violation of the Eighth Amendment.

Finally, and particularly with respect to the claims against the Kentucky Defendants, Plaintiff admits that he abandoned his administrative remedies when he was placed in the Special Housing Unit and then transferred.[5]  Pursuant to 42 U.S.C. § 1997e, no

---

[5] "[T]he ... exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002) (citation omitted).  In addition, a prisoner must exhaust all available administrative remedies even where the relief sought, such as monetary damages, cannot be granted through the administrative process.  <u>Booth v. Churner</u>, 532 U.S. 731 (2001).

Inmates are not required to specifically plead or demonstrate exhaustion in their complaints; instead, failure to exhaust is an affirmative defense that must be pled by the defendant.  <u>Jones v. Bock</u>, 549 U.S. 199 (2007).  Nevertheless, a district court has inherent power to dismiss a complaint which facially violates this bar to suit.  <u>See</u>, <u>e.g.</u>, <u>Bock</u>, 549 U.S. at 214-15 (referring to the affirmative defense of a statute of

claim can be brought in federal court, with respect to prison

conditions, if the prisoner has not exhausted his administrative

remedies.[6]

-----

limitations bar); <u>Lindsay v. Williamson</u>, 271 Fed.Appx. 158, 159-160, 2008 WL 902984, *1 (3d Cir. 2008); <u>Ray v. Kertes</u>, 285 F.3d 287, 293 n.5 (3d Cir. 2002); <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000).

The Bureau of Prisons Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. <u>Id.</u> Appeal to the General Counsel is the final administrative appeal. <u>Id.</u> Response times for each level of review are set forth in 28 C.F.R. § 542.18. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[6] In addition, the Court notes that should Plaintiff wish to proceed in two additional cases, as a prisoner, he would be required to prepay two additional $350 filing fees, either immediately or incrementally, if he is permitted to proceed <u>in forma pauperis</u>. Should those courts dismiss these claims as frivolous or malicious, or for failure to state a claim, they could count as "strikes" under 28 U.S.C. § 1915(g) that would impair Plaintiff's ability to proceed <u>in forma pauperis</u> in federal court in the future, which permits only three such "strikes." As a further consideration of the potential negative impact, to Plaintiff's future ability to litigate as a pauper in federal court, of dismissal of any such severed and transferred

Accordingly, it does not appear that it would be in the interest of justice to sever and transfer the claims against the Texas Defendants or the Kentucky Defendants.  Although the claims against those defendants may now be time-barred, the many deficiencies noted above suggest that the claims are not meritorious.  This Court will dismiss without prejudice, for lack of personal jurisdiction, all claims against the Texas Defendants and the Kentucky Defendants.

B.   Claims Against New Jersey Medical Defendants

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble,

_____

cases, this Court notes that the Bureau of Prisons Inmate Locator reflects an anticipated release date of July 26, 2027, so Plaintiff will be incarcerated for many years to come.  See also United States v. Orozco-Barajas, Criminal No. 08-0190 (S.D. Texas) (reflecting a sentence of 262 months).  Moreover, the medical issues regarding the proper treatment of Plaintiff's leg condition would have to be litigated in three different forums, possibly requiring some degree of participation by the Texas Defendants, the Kentucky Defendants, and the New Jersey Medical Defendants, in all forums, and possibly leading to inconsistent judgments.  Plaintiff has offered no explanation for his failure to timely bring his claims in the appropriate jurisdictions where the courts could exercise personal jurisdiction over the defendants.

429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988). This Court considers Plaintiff's characterization of chronic infections arising out of the injury to his leg as sufficient, at this screening stage, to demonstrate a serious medical need.

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than

mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,'

20

deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment."  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out."  Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'"  Id. at 347 (citation omitted).

     With respect to the New Jersey Medical Defendants, Plaintiff has alleged that these defendants have engaged in a completely ineffective course of treatment with antibiotics and that they have refused to drain the abscesses that have resulted from the ineffective antibiotic treatment.  Consistent with its obligation to construe pro se pleadings liberally, then, it appears to the Court that Plaintiff is asserting that the New Jersey Medical Defendants' persistence in a repeatedly ineffective course of

antibiotics, coupled with the failure to undertake any alternative treatment such as draining the infections, amounts to no meaningful treatment at all, and, thereby, to deliberate indifference to his needs with respect to the recurrent infections.  While the claim here comes close to a mere disagreement over the treatment delivered, it is also plausible on the facts alleged that the defendants knowingly continued an ineffective treatment.  Such allegations are sufficient to state a claim for inadequate medical treatment in violation of the Eighth Amendment.  Cf., e.g., Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (prison officials who continue a course of treatment they know is painful, ineffective, or entails a substantial risk of serious harm act with deliberate indifference); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990) (same).

V.   CONCLUSION

For the reasons set forth above, the Eighth Amendment medical-care claim may proceed as against the New Jersey Medical Defendants.  The claim for injunctive relief may proceed as against Defendant Warden Donna Zickefoose.  All other claims will be dismissed without prejudice.

An appropriate order follows.

s/ Noel L. Hillman
At Camden, New Jersey          Noel L. Hillman
Dated: April 24, 2012          United States District Judge

22