<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SERGIO OROZCO-BARAJAS,<br><br>           Plaintiff,<br><br>           v.<br><br>DONNA ZICKEFOOSE, et al.,<br><br>           Defendants. | Civil Action No. 11-3628 (NLH)<br><br>**OPINION** |

**APPEARANCES:**

Sergio Orozco-Barajas
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ  08640
      Plaintiff <u>pro</u> <u>se</u>

Karen Helene Shelton, Esq.
Assistant U.S. Attorney
402 East State Street
Trenton, NJ  08608
      and
Michael E. Campion
Assistant U.S. Attorney
970 Broad Street
Suite 700
Newark, NJ  07102
      Counsel for Defendants

**HILLMAN,** District Judge

      This case concerns Plaintiff Sergio Orozco-Barajas's claims that the Defendants failed to

provide constitutionally adequate medical care for a chronic leg injury while he was confined at

the Federal Correctional Institution at Fort Dix, New Jersey.  Presently before the Court are the Motion [19] of the individually-named defendants, for summary judgment, as to the claim for damages, and to dismiss the claim for injunctive relief as moot, and the Motion [33] of the United States to dismiss, for lack of jurisdiction, the claim asserted under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), 2671 et seq.[1]

I.  BACKGROUND

This matter was opened to the Court in June 2011, when Plaintiff filed a Complaint [1] describing a chronic leg injury and alleging that various federal correctional officials and medical professionals had failed to properly treat the injury in at least three different federal correctional institutions over a period of several years.  Plaintiff sought damages for the alleged denial of appropriate medical care and injunctive relief, in the form of an order to provide the care he alleged was necessary.  See generally Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971); Carlson v. Green, 446 U.S. 14 (1980).

This Court screened the Complaint for dismissal, pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e, and in an Opinion and Order [5, 6] entered April 25, 2012, ordered that: (1) Plaintiff's Eighth Amendment medical-care claim for damages could proceed as against Defendants Clinical Director Dr. Abigail Lopez de Lasalle, Assistant Health Services Administrator Ed Eichel, Mid-Level Practitioner Jose Ravago, Dr. Williams, and Dr. Samir Sulayman, (the "individually-named Defendants"), (2) Plaintiff's Eighth Amendment claim for injunctive relief, in the form of an order for treatment, could proceed as against Defendant Warden Donna Zickefoose, and (3) all remaining claims would be dismissed.

---

[1] Plaintiff's pending Motion [24] for extension of time to respond to the Motion [19] for summary judgment will be dismissed as moot.  Plaintiff filed his Response [25] on January 22, 2013.

2

On October 2, 2012, the individually-named Defendants filed a Motion [19] to dismiss the claim for injunctive relief as moot, arguing that Plaintiff had received the treatment he requested in his Complaint, and for summary judgment as to the Eighth Amendment claim for damages, arguing that the undisputed evidence demonstrates (1) that there is no evidence that Defendant Ed Eichel had any personal involvement in Plaintiff's care or treatment decisions, and (2) that Plaintiff received timely and appropriate medical care for his leg injury. That Motion is supported by a Statement of Undisputed Material Facts, the Declaration of Dr. Abigail Lopez de Lasalle, with exhibits, and the Declaration of Ed Eichel.

Thereafter, on February 14, 2013, this Court entered an Order [28] granting Plaintiff's Motion [20], dated November 1, 2012, to file an Amended Complaint. The Amended Complaint [29] restates the same claims against the existing individually-named Defendants and asserts a new claim, under the Federal Tort Claims Act, against the United States, arising out of the same factual allegations.

On February 22, 2013, Plaintiff filed a Brief [25] in opposition to the pending Motion [19] for summary judgment. Plaintiff's Brief is not supported by any counter-statement of undisputed material facts or other affidavits or exhibits. Instead, Plaintiff argues that the undisputed facts demonstrate that the individually-named Defendants were deliberately indifferent to his need for medical care. Plaintiff did not respond to the suggestion that his claim for injunctive relief had become moot. In their Reply Brief [32], the individually-named Defendants note that the claims against them remain unchanged in the Amended Complaint and they renew their arguments in favor of their pending Motion to dismiss and for summary judgment.

Also on February 22, 2013, the United States filed its Motion [33] to dismiss the claim under the Federal Tort Claim Act ("FTCA") for lack of jurisdiction.  See Fed.R.Civ.P. Rule 12(b)(1).  More specifically, the United States asserts that Plaintiff failed to file his FTCA claim within six months after denial of his administrative claim.  See 28 U.S.C. §§ 2401(b), 2675.  Plaintiff has not opposed the United States' Motion to dismiss.

## II.  DISCUSSION

A.   The Motion of the Individually-Named Defendants

   1.   The Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court shall grant summary judgment, as to any claim or defense, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.   Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable

4

inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.2004) (quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256–57; Fed.R.Civ.P. Rule 56(c). A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir.2001).

Here, Plaintiff has failed to submit a counter-statement of material facts or otherwise to dispute the statement of material facts submitted by the individually-named Defendants. Accordingly, this Court will consider the facts, as presented by the individually-named Defendants, undisputed for purposes of considering the Motion [19] to dismiss and for summary judgment. See Fed.R.Civ.P. 56(e).

   2.  The Undisputed Facts Regarding Plaintiff's Medical Care

Plaintiff transferred in to the Federal Correctional Institution at Fort Dix, New Jersey, on December 2, 2010, with a pre-existing injury to his left thigh. (Decl. of Abigail Lopez de Lasalle, Motion for Summary Judgment, Ex. 2 at ¶ 4.). Plaintiff had a history of femoral hardware placed in his left thigh due to a fracture from a gunshot wound thirteen years earlier; he had a history of drainage from that wound prior to his transfer. (Id., ¶¶ 4-6.)

Plaintiff reported to Sick Call the next day, Friday, December 3, 2010, complaining of this draining wound and reporting that he had been prescribed antibiotics at his previous institution. (Id., ¶ 5.) Defendant Mid-Level Practitioner ("MLP") Jose Ravago examined Plaintiff and noted a small open would with yellowish discharge. (Id.) MLP Ravago recommended that a culture be taken of the wound and instructed Plaintiff to return on Monday, December 6, 2010, for the culture. (Id.) At that time, Plaintiff did not report any pain. (Id. Ex. 1 at Page ID 139.) Plaintiff was counseled on Wound Care. (Id. Ex. 1 at Page ID 140.)

On December 6, 2010, Dr. Sulayman examined Plaintiff at the Chronic Care Clinic. (Id. ¶ 6.) He noted that Plaintiff had a fracture of his left femur due to a gunshot wound approximately thirteen years earlier. Dr. Sulayman noted that Plaintiff reported that he had experienced drainage from the wound "off and on" and that he had slight drainage that day. (Id. Ex. 1 at Page ID 142.) Dr. Sulayman took a culture of the wound, cleansed and covered the wound, and instructed Plaintiff to return daily for a dressing change. (Id.) He also ordered an x-ray of the left thigh. He deferred prescribing an antibiotic until the results of the wound culture were received in order to determine the appropriate course of treatment. (Id.) At this time, Plaintiff did not report any pain. (Id. Ex. 1 at Page ID 142.) Plaintiff was counseled on Access to Care. (Id. Ex. 1 at Page ID 145.)

On December 15, 2010, Plaintiff reported to Sick Call where MLP Ravago examined him. (Id. ¶ 7.) MLP Ravago noted that the results of the wound culture were pending. Plaintiff reported pain at a level of "4" on a ten-point scale; MLP Ravago prescribed Acetaminophen for pain control. (Id. Ex. 1 at Page ID 146.) In response to Plaintiff's request, MLP Ravago made a consultation request for the Orthopedist to evaluate Plaintiff and make treatment

recommendations. (Id. ¶ 7.) Plaintiff was counseled on Access to Care and Wound Care. (Id. Ex. 1 at Page ID 148.)

On January 3, 2011, Plaintiff reported to Sick Call complaining of pain, at the level of "4" on a ten-point scale, in his left thigh. (Id. ¶ 8 and Ex. 1 at Page ID 155). At that time, MLP Ravago prescribed Ibuprofen for pain and noted that the December 6, 2010, bacterial culture was negative, (skin flora isolated), meaning only normal microorganisms were present, and an antibiotic was not indicated. (Id.)

On January 5, 2011, Plaintiff reported to Sick Call reporting green pus coming out of his old surgical scar, through a one-centimeter opening. (Id. ¶ 9 and Ex. 1 at Page ID 159.) He experienced pain on touch, again at a Level "4," (Id. Ex. 1 at Page ID 158), and an increase in temperature in the affected area; therefore, MLP Vicente Elias prescribed the antibiotic Levofloxacin and instructed Plaintiff to report to Sick Call if his condition worsened. (Id. Ex. 1 at Page ID 160.)

On January 27, 2011, the Orthopedist Dr. Williams evaluated Plaintiff. (Lopez de Lasalle Decl., ¶ 10.) He diagnosed Plaintiff with chronic osteomyelitis (bone infection) of the left femur and recommended: (1) Sensitivity and Culture (already completed), (2) a 30-day course of the antibiotic Bactrim, and (3) follow-up with the Orthopedist in 30 days. (Id.) Also on January 27, 2011, an x-ray confirmed a fracture deformity of Plaintiff's left femur, and revealed ballistic fragments, and lucencies around the metal rod and screws suggesting loosening. (Id. Ex. 1 at Page ID 163, 198.) The 30-day follow-up recommendation was approved by Dr. Lopez de Lasalle that same day. (Id. Ex. 1 at Page ID 164.)

On February 1, 2011, Plaintiff reported to Sick Call for follow-up and MLP Ravago examined him. (Id. ¶ 11.) Plaintiff reported no new complaints and he reported no pain. (Id. Ex. 1 at Page ID 166.)

On February 24, 2011, the Orthopedist Dr. Williams examined Plaintiff for follow-up. (Id. ¶ 12.) The Orthopedist recommended: (1) a CT scan of the left thigh to look for an abscess, (2) continue Bactrim indefinitely, and (3) return to Orthopedic clinic with results of CT scan.[2]

On March 31, 2011, Plaintiff reported to Sick Call complaining of swelling and pain at the level of "6." (Id. ¶ 13 and Ex. 1 at Page ID 173.) MLP Ravago prescribed Ibuprofen for pain and requested that the CT scan be completed as soon as possible. (Id. Ex. 1 at Page ID 174). At 7:20 p.m. that same evening, Plaintiff reported to Sick Call because he could not get his medication; the on-call physician prescribed one dose of Rocephin IM, Bactrim, and Motrin, to accommodate Plaintiff until his prescription could be filled the next day. (Id. Ex. 1 at Page ID 177-79.)

On April 11, 2011, Plaintiff reported to Sick Call for wound treatment and reported pain at the level of "7." He also reported two new areas of possible infection. The new areas were not open or draining, but appeared to be red, swollen, and warm to the touch. (Id. Ex. 1 at Page ID 183-84.) Plaintiff was instructed to return the next morning, but there is no record reflecting that he complied with that instruction. (Id.) On April 15, 2011, Dr. Lopez de Lasalle re-wrote the consult request for the CT scan, as it needed to state "per Radiologist, with or without contrast as indicated." (Id. Ex. 1 at Page 186.)

---

[2] On March 7, 2011, Plaintiff reported to Sick Call for an unrelated complaint. The records of that visit reflect that Plaintiff reported no pain at that time. (Decl. of Lopez de Lasalle, Ex.1 at Page ID 171.)

8

On April 22, 2011, Plaintiff received the CT scan of his left thigh at St. Francis Medical Center, after which he returned to FCI Fort Dix without complication and without reporting any new complaints or pain. (Id. ¶ 14 and Ex. 1 at Page ID 189.) When he returned to FCI Fort Dix, Defendant Ed Eichel spoke with Plaintiff and reviewed the medical records to determine if Plaintiff was prescribed any medication or if any physical or housing restrictions were recommended by the outside medical professionals. (Motion [19], Decl. of Ed Eichel at ¶ 3.)[3]

On the evening of April 30, 2011, Plaintiff complained of a "boil" behind his left knee, that he reported had been present for one to two weeks, and he was examined by his housing unit officer. (Decl. of Lopez de Lasalle ¶ 15.) The on-call physician was contacted and determined that Plaintiff should be evaluated by his Primary Care Physician during the day, as this was not an emergency. (Id.) On May 3, 2011, Plaintiff was seen by his primary care physician, at which time he reported being in no pain. The physician recommended a consult with an orthopedic surgeon for Plaintiff's chronic osteomyelitis and released him to his unit with lower bunk and sedentary work restrictions. (Id. Ex. 1 at Page ID 197-202.)

On May 6, 2011, FCI Fort Dix medical staff received the CT scan report, which revealed an old fracture deformity of the midshaft of the left femur, showed no definite evidence of osteomyelitis, and showed fluid collections that could be related to prior injury or surgery; abscesses could not be completely excluded. (Id. ¶ 16.) Also on May 6, 2011, Clinical Director Dr. Lopez de Lasalle recommended a consultation for the General Surgeon based on the non-effectiveness of the antibiotics. (Id.) Also on May 6, Plaintiff reported to Sick Call, stating that he was experiencing pain at the level of "6," due to the boil behind his knee, which was bleeding and draining pus; the nurse cleaned and dressed that wound. The old surgery scar had minimal

---

[3] This record memorializing Plaintiff's return from the hospital and release to his unit is the only record reflecting any participation by Defendant Ed Eichel in Plaintiff's care.

drainage at that time.    Plaintiff was again given Bactrim and a pain reliever.  (Id. Ex. 1 at Page ID 207, 210.)  These prescriptions were renewed on May 24, 2011.  (Id. Ex. 1 at Page ID 212.)

On May 26, 2011, the consulting Orthopedic Surgeon examined Plaintiff and diagnosed a chronic infection of the left femur.  (Decl. of Lopez de Lasalle, ¶ 17.)  He recommended Incision and Drainage ("I & D") of the wound and debridement.  (Id.)  On June 2, 2011, FCI Fort Dix medical staff reviewed the Orthopedic Surgeon's recommendations and submitted a request for approval of the procedure.  (Id. ¶ 17 and Ex. 1 at Page ID 214-15.)

On June 9, 2011, Plaintiff was again seen by an orthopedic doctor.  At that time, Plaintiff reported no pain.  The Orthopedist noted two small draining wounds and recommended removal of the hardware, I & D of all the wounds, and long-term IV antibiotics.  (Id. ¶ 18 and Ex. 1 Page ID 217.)

On June 13, 2011, the Clinical Director evaluated Plaintiff.  (Id. ¶ 19.)  The surgery request had been approved and was pending scheduling.  In accordance with Plaintiff's request, and to prevent worsening of his condition, the Clinical Director renewed Plaintiff's Bactrim prescription.  (Id.)

On June 29, 2011, Plaintiff was transported to a local hospital where he underwent removal of hardware, I & D, and initiation of IV antibiotics.  (Id. ¶ 20.)  Plaintiff's treatment plan called for four to six weeks of IV antibiotics.  (Id.)  Plaintiff remained hospitalized. (Id. ¶ 22.) On July 5, 2011, Plaintiff's case was discussed with the Clinical Director, Dr. Lopez de Lasalle, who made the decision to prepare a request for medical transfer of Plaintiff, based on the long-term IV antibiotic treatment plan.  (Id. ¶ 21.)  On July 11, 2011, the request for re-designation to the Federal Medical Center (FMC) Devens was approved and Plaintiff was released from the

hospital to FCI Fort Dix, where he remained in the medical department until his transfer to FMC Devens on July 13, 2011.  (Id. ¶ 22.)

At FMC Devens, Plaintiff received rehabilitation and physical therapy.  (Id. ¶ 23.)  At the completion of that therapy, on February 14, 2012, Plaintiff was transferred back to FCI Fort Dix.  (Id. Ex. 2.)  Plaintiff's chronic osteomyelitis has resolved and he has not made any further complaints regarding this issue since his return to FCI Fort Dix.  (Id. ¶ 23.)

      3.      The Eighth Amendment Claim for Damages

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to prevail on a claim for a violation of his right to adequate medical care, an inmate must demonstrate: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.

11

1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment. Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met. ... Finally, deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs

or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted).

Here, Plaintiff argues that the individually-named Defendants were deliberately indifferent to his serious medical needs because they "refused to open and drain these abscesses," instead "persisting in an easy but ineffective course of action and treatment with antibiotics medications." (Opposition Brief [25] at 4.) Plaintiff alleges that the medical staff at FCI Fort Dix knew or should have known that "prompt surgical removal" of the hardware in his leg was a necessary treatment.

Contrary to Plaintiff's characterization of events, the undisputed facts demonstrate that the medical staff at FCI Fort Dix proceeded with an evaluation of the need for surgical treatment on a parallel course with their treatment of the chronic infection with antibiotics. A request for consultation with an Orthopedist was made within two weeks of Plaintiff's transfer in to FCI Fort Dix. FCI Fort Dix medical staff complied with the suggestion for an x-ray and CT scan to aid in diagnosis of the cause for Plaintiff's draining wound. FCI Fort Dix medical staff timely reviewed the recommendation for surgery and requested approval. Nor did the medical staff ignore Plaintiff's intermittent reports of moderate pain, promptly responding to such reports with prescriptions for pain medication. All that Plaintiff has demonstrated is his personal disagreement about the time it should have taken the FCI Fort Dix medical staff to determine that

surgery was necessary, which is insufficient to state a claim for an Eighth Amendment violation. There is nothing in the record to suggest that a timetable of approximately six months is an unreasonably long period of time to pursue an antibiotic course of treatment, order diagnostic tests, schedule consultations with specialists, and schedule surgery for Plaintiff's condition, especially as Plaintiff's infection and pain were medically managed during that period. Plaintiff has failed to demonstrate that there is a genuine issue regarding "deliberate indifference" in the course of treatment pursued by the individually-named Defendants. Their motion for summary judgment will be granted.

   4. <u>The Eighth Amendment Claim for Injunctive Relief</u>

  Plaintiff's claim for injunctive relief, in the form of an order for treatment, has become moot.

  It is axiomatic that "federal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971). This inability to decide moot cases derives from the requirement of Article III of the U.S. Constitution under which the exercise of judicial power depends upon the existence of a "case or controversy." <u>DeFunis v. Odegaard</u>, 416 U.S. 312 (1974) (citations omitted).

  Where an inmate seeks injunctive relief in the form of an order compelling medical treatment, the claim is mooted by the delivery of the requested medical care during the pendency of the litigation. <u>See</u>, <u>e.g.</u>, <u>Williamson v. Correctional Medical Services, Inc.</u>, No. 07-4425, 304 Fed.Appx. 36, 37 (3d Cir. Dec. 23, 2008) (claim for order compelling knee surgery and dental care); <u>McKeithan v. Iannuzzi</u>, Civil Action No. 10-1751, 2012 WL 2308620, *5 (M.D. Pa. June 18, 2012) (request for treatment of ingrown toenail). Accordingly, the claim for injunctive relief will be dismissed as moot.

B. <u>The Motion to Dismiss the Claim under the Federal Tort Claims Act</u>

The United States has moved for dismissal of the claim under the Federal Tort Claim Act, arguing that Plaintiff's failure to timely file the claim deprives this Court of jurisdiction.

1. <u>Rule 12(b)(1) Standard</u>

As the Third Circuit has held, "[f]ederal courts are courts of limited jurisdiction, and when there is a question as to our authority to hear a dispute, 'it is incumbent upon the courts to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" <u>Zambelli Fireworks Mfg. Co. v. Wood</u>, 592 F.3d 412, 418 (3d Cir.2010) (citing <u>Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n.</u>, 554 F.2d 1254, 1256 (3d Cir.1977)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the existence of a federal court's subject matter jurisdiction. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." <u>Symczyk v. Genesis HealthCare Corp.</u>, 656 F.3d 189, 191 n. 4 (3d Cir.2011) (citing <u>Kehr Packages, Inc. v. Fidelcor, Inc.</u>, 926 F.2d 1406, 1409 (3d Cir.1991)).

A motion to dismiss for lack of subject matter jurisdiction may either (1) "attack the complaint on its face" or (2) "attack the existence of subject matter jurisdiction in fact, quite apart from any pleadings." <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir.1977). "The defendant may facially challenge subject matter jurisdiction by arguing that the complaint, on its face, does not allege sufficient grounds to establish subject matter jurisdiction." <u>D.G. v. Somerset Hills School Dist.</u>, 559 F.Supp.2d 484, 491 (D.N.J.2008). On a facial attack, "the court must consider the allegations of the complaint as true." <u>Mortensen,</u> 549 F.2d at 891. "A defendant can also attack subject matter jurisdiction by factually challenging the jurisdictional allegations set forth in the complaint." <u>D.G.</u>, 559 F.Supp.2d at 491.

Upon a factual attack, by contrast, the court need not presume the truth of the allegations and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Mortensen, 549 F.2d at 891. Moreover, when considering a factual challenge to the Court's jurisdiction under Rule 12(b)(1), the Court is "not confined to the allegations in the complaint ... and can look beyond the pleadings to decide factual matters relating to jurisdiction." Cestonaro v. U.S., 211 F.3d 749, 752 (3d Cir.2000) (citing Mortensen, 549 F.2d at 891). The defendant may factually attack subject matter jurisdiction at any stage in the litigation, including before the answer has been filed. D.G., 559 F.Supp.2d at 491.

    2.    The Federal Tort Claims Act

The United States has sovereign immunity except where it consents to be sued. United States v. Mitchell, 463 U.S. 206, 212 (1983). In the absence of such a waiver of immunity, Plaintiff cannot proceed in an action for damages against the United States. See FDIC v. Meyer, 510 U.S. 471, 484-87 (1994). The Federal Tort Claims Act constitutes a limited waiver of the sovereign immunity of the United States. 28 U.S.C. § 2679(b)(1). The FTCA gives a district court exclusive jurisdiction over civil actions

> [1] against the United States, [2] for money damages, ... [3] for injury or loss of property, ... [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

Deutsch v. United States, 67 F.3d 1080, 1091 (3d Cir. 1995) (quoting 28 U.S.C. § 1346(b)); see also Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 477 (1994); United States v. Muniz, 374 U.S. 150 (1963). However, a district court lacks jurisdiction over a federal tort claim unless the

claimant has first exhausted administrative remedies.  See  28 U.S.C. §  2675(a); see also McNeil v. United States, 508 U.S. 106 (1993); Deutsch, 67 F.3d at 1091.[4]

In addition, an inmate must file his FTCA action in the district court within six months of the date that the notice of final denial of the claim is mailed to him by the agency.  28 U.S.C. § 2401(b) ("A tort claim against the United States shall be forever barred … unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.").  The FTCA statute of limitations, however, is not jurisdictional; in appropriate circumstances, for example, the doctrine of equitable tolling can apply to actions asserted under it.  Santos ex rel. Beato v. U.S., 559 F.3d 189, 194-95 (3d Cir. 2009).  Instead, "untimeliness 'is an affirmative defense which the defendant has the burden of establishing.'"  Royster v. U.S., No. 10-2000, 475 Fed.Appx. 417, 419-20 (3d Cir. March 30, 2012) (quoting Hughes v. United States, 263 F.3d 272, 278 (3d Cir. 2001) (citations and internal quotation marks omitted)).

3.   Analysis

Here, the United States asks this Court to look beyond the pleading, attaching to its Motion the Declaration of Legal Assistant Tara Moran, a copy of Petitioner's administrative Claim for damages arising out of the alleged failure to properly treat his leg injury, and the December 9, 2011, Letter denying his claim, which was sent to Plaintiff by certified mail.

---

[4] To exhaust administrative remedies before the Bureau of Prisons ("BOP"), a federal inmate must submit his tort claim for a sum certain to the BOP's Regional Office in the region where the claim occurred.  28 C.F.R. § 543.31(b).  The Regional Counsel is authorized to deny the claim, propose to the claimant a settlement, or forward the claim with recommendations to the Office of General Counsel.  28 C.F.R. § 543.31(d).  The General Counsel is required to consider the merits of a claim that has not been denied or settled by Regional Counsel.  28 C.F.R. §  543.31(e). Agency action is final upon either (1) the denial of a claim by Regional Counsel or General Counsel, or (2) their failure to finally dispose of the claim within six months from the date of filing.  28 C.F.R. § 543.31(f), (g).  Here, there is no dispute that Plaintiff properly exhausted his administrative remedies.

(Motion, Decl. of Tara Moran, Exs. 1, 2.)  The Letter denying Petitioner's claim contains the advice that, "If you are dissatisfied with this decision, you may bring an action against the United States in an appropriate United States District Court within six (6) months of the date of this memorandum."  (Id. Ex. 2.)[5]  The United States argues that Plaintiff's proposed amended complaint, [20] in which he first asserted an FTCA claim against the United States, and which was submitted to the Court on November 1, 2012, is untimely and deprives this Court of jurisdiction to hear the FTCA claim.

As noted above, however, the suggestion of untimeliness does not go to the issue of jurisdiction.  Accordingly, the motion to dismiss for lack of jurisdiction will be denied.  Nevertheless, the suggestion of untimeliness constitutes the assertion of an affirmative defense, which the United States bears the burden of proving, and which requires this Court to apply a summary judgment standard in order to consider the government's affidavit and exhibits and to decide the issue.  See Hughes v. U.S., 263 F.3d 272, 278 (3d Cir. 2001); Fed.R.Civ.P. 12(d).

The Tara Moran affidavit and exhibits establish that Plaintiff was sent proper notice of the denial of his administrative claim, by certified mail, on December 9, 2011, giving him until June 9, 2012, to file his FTCA claim in the appropriate federal district court.  Plaintiff had the opportunity to respond, but he has not opposed the Motion to dismiss and has presented no argument or evidence suggesting any basis for equitable tolling.[6]  Indeed, there is no issue as to

---

[5] Plaintiff first requested leave to amend the Complaint to assert an FTCA claim by Motion [11] dated June 21, 2012.  By Order [14] entered August 13, 2012, this Court ordered Plaintiff to submit the proposed amended complaint within 14 days thereafter.  Plaintiff did not submit the proposed amended complaint [20] until November 1, 2012.

[6] The Court of Appeals for the Third Circuit has identified three principal situations in which equitable tolling might be appropriate: "(1) the defendant has actively misled the plaintiff respecting the cause of action; (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, or (3) the plaintiff has raised the precise statutory claim but has

the authenticity of the December 9, 2011, Letter, as Plaintiff attached a copy of the same Letter to his first Motion [11] for leave to amend, to establish exhaustion of administrative remedies. As the undisputed evidence shows that Plaintiff did not mail his motion to amend, attaching a copy of his proposed amended complaint first asserting the FTCA claim, until November 1, 2012,[7] the FTCA claim is untimely and will be dismissed with prejudice on that basis.[8]

### III. CONCLUSION

For the reasons set forth above, the Motion for summary judgment will be granted, the Motion to dismiss as moot the Eighth Amendment claim for injunctive relief will be granted, and the FTCA claim will be dismissed with prejudice as untimely. An appropriate order follows.

At Camden, New Jersey　　　　　　　　　　s/ Noel L. Hillman
　　　　　　　　　　　　　　　　　　　　Noel L. Hillman
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated: May 14, 2013

---

mistakenly done so in the wrong forum." Sch. Dist. of Allentown v. Marshall, 657 F.2d 16, 20 (3d Cir. 1981) (quotations and citations omitted). The circumstances to justify equitable tolling, however, must be extraordinary and "do not extend to what is a garden-variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990); see also Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005) ("Equitable tolling is an extraordinary remedy which should be extended only sparingly.").

The Court notes that Plaintiff alleged, in his second Motion [20] to amend, that the fellow inmate who had been assisting him was no longer housed in the same institution, that Plaintiff had tried to obtain help from an outside lawyer, and that he later found another fellow inmate to assist him. These facts do not rise to the level of "extraordinary" circumstances sufficient to justify equitable tolling.

[7] This Court will deem the Amended Complaint filed as of the date the Motion to amend was mailed. See Houston v. Lack, 487 U.S. 266 (1988); Burns v. Morton, 134 F.3d 109 (3d Cir. 1998).

[8] The same result would obtain with respect to Plaintiff's first Motion for leave to amend, which was dated June 21, 2012, after expiration of the June 9, 2012, six-month FTCA limitations deadline.